Slip Op. 15 - 117

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| AMERICAN FIBER & FINISHING, INC.,<br><br>        Plaintiff,<br><br>               v.<br><br>UNITED STATES,<br><br>        Defendant. | Before: Donald C. Pogue,<br>        Senior Judge<br><br>Court No. 12-00138 |

<u>OPINION and ORDER</u>

[Defendant's motion for partial summary judgment denied;
Plaintiff's cross-motion for partial summary judgment granted in
part and denied in part]

Dated: October 21, 2015

    <u>Arthur K. Purcell</u>, Sandler, Travis & Rosenberg, P.A.,
of New York, NY, for the Plaintiff.

    <u>Jason M. Kenner</u>, Trial Attorney, Commercial Litigation
Branch, Civil Division, U.S. Department of Justice, of New York,
NY, for the Defendant.  Also on the brief were <u>Joyce R. Branda</u>,
Acting Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director,
and <u>Amy M. Rubin</u>, Assistant Director.  Of counsel was <u>Beth
Brotman</u>, Office of Assistant Chief Counsel, International Trade
Litigation, U.S. Customs and Border Protection, of New York, NY.

    **Pogue, Senior Judge:** In this action, Plaintiff,

American Fiber & Finishing, Inc. ("AFF"), challenges the denial

of its protests made pursuant to § 514 of the Tariff Act of

1930, as amended, 19 U.S.C. § 1514 (2012),[1] and 19 C.F.R.

§ 174.11 (2012), by the Bureau of Customs and Border Protection

("CBP" or "Customs").  In those protests, and now before the

court, Plaintiff claims that Customs incorrectly assessed the

rate and amount of duties chargeable in liquidating[2] sixteen of

Plaintiff's imports of cotton gauze fabric. Summons, ECF No. 1,

at Form 1-3 (listing the sixteen entries); 2d Am. Compl., ECF

No. 11-1, at ¶ 1.  Plaintiff asserts that Customs violated

19 U.S.C. § 1625(c)(2) by making an interpretive ruling or

decision modifying or revoking a previously accorded treatment

of AFF's goods, reclassifying and rate-advancing them, without

the statutorily required notice and comment. 2d Am. Compl., ECF

No. 11-1, at ¶¶ 17-32.  The court has jurisdiction over

Plaintiff's claim pursuant to 28 U.S.C. § 1581(a).[3]

        Defendant and Plaintiff now cross-move for partial

---

[1] All further citations to the Tariff Act of 1930, as amended,
are to Title 19 of the U.S. Code, 2012 edition, unless otherwise
noted.

[2] Liquidation is "the final computation or ascertainment of
duties on entries for consumption or drawback entries." 19
C.F.R. § 159.1.

[3] 28 U.S.C. § 1581(a) provides that this Court "shall have
exclusive jurisdiction of any civil action commenced to contest
the denial of a protest, in whole or in part, under [19 U.S.C. §
1515]."

summary judgment.[4]  Because Plaintiff has alleged an appropriate

interpretive ruling or decision within the meaning of 19 U.S.C.

§ 1625(c) and claim of treatment, as discussed below,

Defendant's motion is denied, while Plaintiff's cross-motion is

granted in part and denied in part.


                            BACKGROUND

         Plaintiff claims that it has, for some time, imported

cotton gauze fabric under subheading 5803.00.10, Harmonized

Tariff Schedule of the United States ("HTSUS"), a duty free

provision.[5] 2d Am. Compl., ECF No. 11-1, at ¶¶ 9-13.  Among these

importations was an entry made on July 11, 2009.  Following

laboratory testing,[6] on January 14, 2010, Customs issued a CF-29

notice of action[7] to Plaintiff indicating that this entry and all

---

[4] Def.'s Partial Mot. for Summ. J. or, in the Alt., for a
Determination of the Date of Pl.'s Claim of Treatment, ECF No.
36 ("Def.'s Mot."); Pl.'s Partial Cross-Mot. for Summ. J., ECF
No. 39 ("Pl.'s Mot.").

[5] 5803.00.10, HTSUS, covers "Gauze, other than narrow fabrics of
heading 5806: Of cotton."

[6] See Laboratory Report, reproduced in Pl.'s Br. in Supp. of
Partial Cross-Mot. for Summ. J. & in Opp'n to Def.'s Mot. for
Summ. J., ECF No. 39-1 ("Pl.'s Br.") at Ex. B.

[7] A CF-29 notice of action is issued pursuant to 19 C.F.R.
§ 152.2 (providing that "[i]f the port director believes that
the entered rate or value of any merchandise is too low, or if
he finds that the quantity imported exceeds the entered
quantity, and the estimated aggregate of the increase in duties
on that entry exceeds $15, he shall promptly notify the importer
                                        (footnote continued)

such entries "scheduled to liquidate" should be reclassified

under subheading 5208.21.4090, HTSUS,[8] at a duty rate of 10.2

percent *ad valorem*. Notice of Action (Jan. 14, 2010), <u>reproduced</u>

<u>in</u> Pl.'s Br., ECF No. 39-1 at Ex. A ("Jan. 2010 Notice of

Action"); 2d Am. Compl., ECF No. 11-1, at ¶ 14.[9]  Subsequently,

in September through November 2010, Customs issued a series of

similar notices of action reclassifying and rate advancing a

number of Plaintiff's entries that had been made between

September 2009 and April 2010.[10]

---

on Customs Form 29, specifying the nature of the difference on
the notice").

[8] 5208.21.4090, HTSUS, covers "Woven fabrics of cotton,
containing 85 percent or more by weight of cotton, weighing not
more than 200 g/m$^2$: Bleached: Plain weave, weighing not more than
100 g/m$^2$: Of Numbers 43 to 68: Cheesecloth."

[9] Customs instructed Plaintiff to "provide to CBP a list of
entries scheduled to liquidate under the 314 day liquidation
cycle that were not entered as referenced above. Submit
voluntary tenders where applicable." Jan. 2010 Notice of Action,
ECF No. 39-1 at Ex. A.

[10] <u>See</u> Notice of Action (Sept. 29, 2010), <u>reproduced in</u> Pl.'s
Br., ECF No. 39-1 at Ex. C, at 5 (following laboratory testing,
reclassifying and rate advancing eight of Plaintiff's entries of
"100 [percent] cotton leno weave gauze" from 5803.00.1000,
HTSUS, duty-free to 5208.21.6090, HTSUS, 11.5 percent *ad
valorem*); Notice of Action (Sept. 29, 2010), <u>reproduced in</u> Pl.'s
Br., ECF No. 39-1 at Ex. C, at 6 (following lab report, rate
advancing three of Plaintiff's entries of "100 [percent] cotton
leno weave gauze roll" from 5803.00.1000, HTSUS, duty-free to
5208.21.6090, HTSUS, 11.5 percent *ad valorem*); Notice of Action
(Oct. 1, 2010), <u>reproduced in</u> Pl.'s Br., ECF No. 39-1 at Ex. C,
at 2 (reclassifying and rate advancing Plaintiff's entry of
"leno weave gauze," "as well as any previous/subsequent entries
invoiced with this commodity," as listed, to 5208.21.6090,
(footnote continued)

As instructed by these notices of action, from October

2010 through January 2011, Plaintiff made sixteen entries of

cotton gauze fabric under one of two HTSUS provisions — either

subheading 5208.11.40, HTSUS,[11] at a duty rate of 9 percent *ad*

*valorem*, or subheading 5208.21.40, HTSUS,[12] at a duty rate of

10.2 percent *ad valorem* – rather than the duty-free 5803, HTSUS

provision Plaintiff had previously used. Summons, ECF No. 1, at

Form 1-3; 2d Am. Compl., ECF No. 11-1, at ¶¶ 8-9.  Customs then

liquidated the merchandise as entered through "bypass"

procedures.[13] Decl. of Stephanie Allen, Senior Import Specialist,

---

HTSUS, at a duty rate of 11.5 percent *ad valorem*); Notice of
Action (Oct. 4, 2010), reproduced in Pl.'s Br., ECF No. 39-1 at
Ex. C, at 1 (rate advancing Plaintiff's entry, made on Sept. 4,
2009, of "gauze in roll"); Notice of Action (Nov. 18, 2010),
reproduced in Pl.'s Br., ECF No. 39-1 at Ex. C, at 7 (rate
advancing one of Plaintiff's entries of "gauze roll" to
5208.21.6090, HTSUS, 11.5 percent *ad valorem*).  Plaintiff
protested the liquidation of some of these entries, had the
protests denied, and then challenged those denials pursuant to
19 U.S.C. § 1515.  These denials are currently the subject of a
related case on this Court's Reserve Calendar.  See Summons, Ct.
No. 12-00139, ECF No. 1; Pl.'s Br., ECF No. 39-1, at 3 n.2.

[11] 5208.11.40, HTSUS, covers "Woven fabrics of cotton, containing
85 percent or more by weight of cotton, weighing not more than
200 g/m$^2$: Unbleached: Plain weave, weighing not more than 100
g/m$^2$: of Numbers 43 to 68."

[12] 5208.21.40, HTSUS, covers "Woven fabrics of cotton, containing
85 percent or more by weight of cotton, weighing not more than
200 g/m$^2$: Bleached: Plain weave, weighing not more than 100 g/m$^2$:
Of Numbers 43 to 68."

[13] Under the bypass procedures "importers declare a value and
tariff classification for their goods when they import them;
Customs port directors may liquidate the goods as declared,
                                            (footnote continued)

CBP, reproduced in Attach. to Def.'s Mem. in Supp. of its

Partial Mot. for Summ. J. ("Attach. to Def.'s Br."), ECF No. 36-

1 at Ex. 1 ("Allen Decl."), at ¶ 3.  On March 8 and 12, 2012,

Plaintiff timely filed protests of these liquidations. 2d Am.

Compl., ECF No. 11-1, at ¶ 15.  Customs denied the protests. Id.

Plaintiff now contests Customs' denials, id., at ¶ 5, claiming,

as it did in its protests, that Customs violated 19 U.S.C.

§ 1625(c) when it liquidated the sixteen entries, because

Customs made an "interpretive ruling or decision" that modified

or revoked a "treatment previously accorded" Plaintiff's

"substantially identical transactions" without the statutorily

prescribed notice and comment. 19 U.S.C. § 1625(c)(2); 2d Am.

Compl., ECF No. 11-1, at ¶¶ 17-32.[14]

---

without inspecting the goods or otherwise independently
determining the proper duty to be paid." Motorola, Inc. v.
United States, 436 F.3d 1357, 1362 (Fed. Cir. 2006); see Customs
Service: 19 C.F.R. Part 177, 67 Fed. Reg. 53,483, 53,491 (Dep't
Treasury Aug. 16, 2002) ("Customs must deal with a very large
number of import transactions each year and must at the same
time facilitate international trade.  It is simply impossible
for Customs to facilitate trade and at the same time review all
import transactions.  Accordingly, Customs has adopted
procedures, such as selectivity and bypass, which are intended
to strike a workable balance between these two competing goals.
As a result, the vast majority of import transactions do not
receive Customs review.").

[14] See Attach. to Protest 1512-12-100039 (Mar. 8, 2012)
reproduced in Pl.'s Br., ECF No. 39-1 at Ex. D, at 1 ("Attach.
to Protest") (claiming that "the imported merchandise . . . is
correctly classified in subheading 5803.00.1000, [HTSUS], for
which the duty rate is Free, rather than in subheading
(footnote continued)

Currently before the court is Defendant's motion for partial summary judgment, Def.'s Mot., ECF No. 36, and Plaintiff's cross-motion for partial summary judgment, Pl.'s Mot., ECF No. 39.  In their motions, Defendant and Plaintiff raise two issues:  First, they argue whether Plaintiff's claim fails as a matter of law because it cannot identify an "interpretive ruling or decision" through which Customs revoked or modified the alleged treatment, for the purposes of 19 U.S.C. § 1625(c).[15]  Second, if Plaintiff's claim does not fail as a matter of law, the parties seek a ruling on an issue of regulatory interpretation.  Specifically, in order to establish the existence of a "treatment previously accorded" by Customs under 19 U.S.C. § 1625(c), Plaintiff must provide, *inter alia*, evidence of that treatment "[o]ver a 2-year period immediately preceding the claim of treatment." 19 C.F.R. § 177.12(c)(1)(i)(C).  The parties dispute the meaning of "claim

---

5208.21.4090, HTSUS, the tariff provision under which the fabrics were liquidated," and that "the fabrics are classifiable in Heading 5803 due to an established treatment of classification of [AFF's] merchandise . . . under 19 U.S.C. § 1625").

[15] Def.'s Mem. in Supp. of its Partial Mot. for Summ. J., ECF No. 36 ("Def.'s Br."), at 4-6; Mem. in Opp'n to [Pl.'s Mot.], ECF No. 47 ("Def.'s Resp."), at 4-12; Pl.'s Br., ECF No. 39-1, at 6-12; Pl.'s Reply to [Def.'s Resp.], ECF No. 50 ("Pl.'s Reply"), at 2-9.

of treatment" to determine the relevant 2-year evidentiary

period.[16]


## STANDARD OF REVIEW

Because the court has jurisdiction over this action

pursuant to 28 U.S.C. § 1581(a), questions of both fact and law

presented here are reviewed *de novo*. 28 U.S.C. § 2640(a)(1).[17]

The court will grant summary judgment when "there is

no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." USCIT Rule 56(a).  A

dispute is genuine if "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party"; a fact is

material when it "might affect the outcome of the suit under the

governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986).  "[T]he plain language of [the rule] mandates the

entry of summary judgment, after adequate time for discovery and

upon motion, against a party who fails to make a showing

─────────────

[16] Def.'s Br., ECF No. 36, at 7-9; Def.'s Resp., ECF No. 47, at
12-17; Pl.'s Br., ECF No. 39-1, at 12-21; Pl.'s Reply, ECF No.
50, ECF No. 50, at 9-14.

[17] Under 28 U.S.C. § 2640(a)(1), the court "make[s] its
determination[] upon the basis of the record made before the
court," in "[c]ivil actions contesting the denial of a protest
under [19 U.S.C. § 1515]. See also Park B. Smith, Ltd. v. United
States, 347 F.3d 922, 924 (Fed. Cir. 2003) ("The Court of
International Trade is required to decide, on a de novo basis,
civil actions that contest the denial of a protest to a Customs
classification ruling.").

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where, as here, parties cross-move for summary judgment, "each party carries the burden on its own motion to show entitlement to judgment as a matter of law after demonstrating the absence of any genuine disputes over material facts." Massey v. Del Labs., Inc., 118 F.3d 1568, 1573 (Fed. Cir. 1997).

## DISCUSSION

I.  Whether Plaintiff can identify an "interpretive ruling or decision" for the purposes of 19 U.S.C. § 1625(c)

Under 19 U.S.C. § 1625(c)(2), Customs must follow notice and comment procedures before it issues an "interpretive ruling or decision which would . . . have the effect of modifying [a] treatment previously accorded by [Customs] to substantially identical transactions."[18]  Defendant argues that Plaintiff's claim fails as a matter of law because Plaintiff has

---

[18] See Sea-Land Serv., Inc. v. United States, 239 F.3d 1366, 1372 (Fed. Cir. 2001) ("Section 1625(c) mandates that Customs provide notice and comment under specific circumstances. First, 1625(c) only applies to a proposed interpretive ruling or decision by Customs. Second, the proposed interpretive ruling or decision must either modify or revoke a prior ruling or decision or have the effect of modifying Customs['] previous treatment of substantially identical transactions.") (citations omitted).

not identified "a proposed interpretive ruling or decision"

within the meaning of 19 U.S.C. § 1625(c). Def.'s Br., ECF No.

36, at 4-6; Def.'s Resp., ECF No. 47, at 4-12.  Plaintiff

counters, arguing that Customs' January 2010 Notice of Action,

see Jan. 2010 Notice of Action, ECF No. 39-1 at Ex. A, may

constitute an "interpretive ruling or decision" within the

meaning of 19 U.S.C. § 1625(c). Pl.'s Br., ECF No. 39-1, at

6-12; Pl.'s Reply, ECF No. 50, at 2-9; see also 2d Am. Compl.,

ECF No. 11-1, at ¶ 14.  Plaintiff also cross-moves for an

affirmative finding that the January 2010 notice of action is an

interpretive ruling or decision within the meaning of 19 U.S.C.

§ 1625(c). Pl.'s Mot., ECF No. 39; Pl.'s Br., ECF No. 39-1, at

7-9; Pl.'s Reply, ECF No. 50, at 5.

        While 19 U.S.C. § 1625 does not define an

"interpretive ruling or decision", it does provide examples.[19]

An interpretive ruling "include[s] any ruling letter, or

internal advice memorandum," 19 U.S.C. § 1625(a), and a

"decision" may be, but is not limited to, a protest review

decision.[20]  Whether a determination falls within the ambit of

_____

[19] See Int'l Custom Prods., Inc. v. United States, 748 F.3d 1182,
1188 (Fed. Cir. 2014) (describing the statutory language as
"exemplary, not exhaustive").

[20] California Indus. Prods., Inc. v. United States, 436 F.3d
1341, 1351 (Fed. Cir. 2006) ("In short, 'decision' in the phrase
'ruling or decision' in 19 U.S.C. § 1625(c), includes a 'protest
                                              (footnote continued)

19 U.S.C. § 1625(c) depends on its substance, not its form.

Int'l Custom Products, 748 F.3d at 1187-88. If a determination

is the result of considered deliberations,[21] if it "interprets

and applies the provisions of the Customs and related laws to a

specific set of facts,"[22] if it has the effect of "unilaterally

chang[ing] the rules" upon which importers have come to rely,[23]

if it is otherwise "the functional equivalent of interpretive

rulings or decisions,"[24] then it may be an interpretive ruling or

decision and thereby may trigger 19 U.S.C. § 1625 notice and

---

review decision.'"); Kahrs Int'l, Inc. v. United States, 33 CIT
1316, 1353, 645 F. Supp. 2d 1251, 1285 (2009) ("Thus, based on
Congress' use of the word 'includes' in the statutory language
of § 1625(c), a 'protest review decision' is to be included
among the larger category of otherwise generic Customs'
'decision[s].'") (alteration in original).

[21] See Int'l Custom Prods., 748 F.3d at 1188.

[22] 19 C.F.R. § 177.1(d)(1)(Customs' regulation providing the
definition of a "ruling," promulgated pursuant to Commerce's
authority under 19 U.S.C. § 1624).

[23] S. Rep. No. 103-189, at 64 (1993) (discussing the purpose of
19 U.S.C. § 1625); see also H.R. Rep. No. 103-361(I), at 124
(1993), reprinted in 1993 U.S.C.C.A.N. 2552, 2674 (indicating
that 19 U.S.C. § 1625 was meant to "provide assurances of
transparency concerning Customs rulings and policy directives").

[24] Kahrs Int'l, 33 CIT at 1353, 645 F. Supp. 2d at 1285
("Accordingly, this Court finds for purposes of deciding this
case, the text of [19 U.S.C.] § 1625 covers interpretive
rulings, ruling letters, internal advice memoranda, protest
review decisions, or decisions that are the functional
equivalent of interpretive rulings or decisions.").

comment requirements.[25]   Therefore, as the Federal Circuit has recently held, a notice of action may be an interpretive ruling or decision within the meaning of 19 U.S.C. § 1625(c), depending on the substance of the determination contained therein. Int'l Custom Products, 748 F.3d at 1188 ("The [Court of International Trade] did not err in holding that the Notice of Action in this case amounts to an interpretive ruling or decision subject to § 1625(c)'s notice and comment procedures.").

Accordingly, because a notice of action may be an interpretive ruling or decision, by offering the January 2010 notice of action as a possible interpretive ruling or decision, Plaintiff has "establish[ed] a genuine issue of material fact" through evidence, a document, in the record, sufficient to survive summary judgment on this issue. See USCIT Rule 56(c)(1)(A) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including . . . documents[.]").[26]   However, Plaintiff has not offered evidence

---

[25] See Int'l Custom Prods., 748 F.3d at 1185-89 (considering the contents and effect of a notice of action, as well as its deliberative nature and plaintiff's reliance on the previous ruling, to determine whether it was an interpretive ruling within the meaning of 19 U.S.C. § 1625(c)).

[26] See also Long Island Sav. Bank, FSB v. United States, 503 F.3d 1234, 1244 (Fed. Cir. 2007) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 248); Netscape Commc'ns Corp. v. Konrad, 295

(footnote continued)

sufficient to establish that this notice of action is,

substantively, an interpretive ruling or decision, as Plaintiff

has yet to prove that the notice of action was the result of

considered deliberation and effectively revoked a treatment.[27]

    Accordingly, there still remains a genuine dispute of

material fact, such that both motions, on this issue, must be

denied. See Marriott Int'l Resorts, 586 F.3d at 969 ("To the

extent there is a genuine issue of material fact, both motions

must be denied.") (citation omitted).[28]

---

F.3d 1315, 1319 (Fed. Cir. 2002) ("When ruling on a motion for
summary judgment, all of the nonmovant's evidence is to be
credited, and all justifiable inferences are to be drawn in the
nonmovant's favor.") (citation omitted).

[27] Plaintiff argues that "the 2010 Notice of Action meets all the
core requirements . . . necessary to constitute a communication
subject to notice and comment under [19 U.S.C. § 1625(c)],"
because "[i]t identifies the product, expresses disagreement
with the importer's classification, and directs under pain of
penalty that future imports be classified differently than had
been the case prior." Pl.'s Resp., ECF No. 50, at 5; see also
Pl.'s Br., ECF No. 39-1, at 7-9.  However, this only suggests
that the notice of action "interprets and applies the provisions
of the Customs and related laws to a specific set of facts,"
19 C.F.R. § 177.1(d)(1).  It does not establish that the notice
of action was the result of considered deliberation and
effectively revoked a treatment. Cf. Int'l Custom Prods., 748
F.3d. at 1188-89 (finding that a notice of action was the result
of "considered deliberations" after Plaintiff provided evidence
of a "months-long deliberative process" by Custom's Office of
Regulations and Rulings (which is responsible for reviewing and
issuing ruling letters) and "effectively revoked" a previous
ruling letter made by that same office).

[28] Plaintiff also argues that Customs' liquidation of the entries
at issue here may be considered an interpretive ruling or
decision because, while the merchandise was liquidated as
                                        (footnote continued)

## II.   Plaintiff's "claim of treatment"

While 19 U.S.C. § 1625 leaves the term "treatment" ambiguous,[29] Customs has provided[30] a reasonable and permissible construction in 19 C.F.R. § 177.12(c), where it defines what is necessary to prove a "treatment [was] previously accorded [by Customs] to substantially identical transactions." Motorola, 436 F.3d at 1365-66.  In order to establish a previously accorded treatment, a party must show, *inter alia*, that "there was an actual determination by a Customs officer regarding the facts

---

entered, the liquidation "subsumed and put into effect the agency's prior tariff change decision, namely the January 2010 Notice of Action." Pl.'s Br., ECF No 39-1, at 11-12.  However, the entries at issue here were liquidated as entered, through bypass procedures, "meaning that they were designated as entries that could be liquidated without scrutiny by Customs officials." Ellen Decl., ECF No. 36-1 at Ex. 1, at ¶ 3.  They "were processed without any review or examination by the commodity team charged with classifying the merchandise." Id.  "[T]he mere liquidation of merchandise at the declared bypass rate" is not an "interpretive ruling or decision" under 19 U.S.C. § 1625(c). Kahrs Int'l, 33 CIT at 1353, 645 F. Supp. 2d at 1285-86 (quoting California Indus. Prods., 436 F.3d at 1351 ("Section 1625(c) only applies when Customs issues an 'interpretive ruling or decision.'")).

[29] Motorola, 436 F.3d at 1365 (holding that the term "treatment" is ambiguous in 19 U.S.C. § 1625(c)(2) because "[t]he question of what degree of [agency] action (as opposed to acquiescence) is sufficient to [create a treatment]" is left open).

[30] See 19 U.S.C. § 1624 (Customs is "authorized to make such rules and regulations as may be necessary to carry out the provisions of [Chapter 19]."); Customs Service: 19 CFR Part 177, 67 Fed. Reg. at 53,484 (providing that 19 C.F.R. § 177.12 was promulgated, pursuant to notice and comment rulemaking, to implement "the terms of 19 U.S.C. § 1625(c) through appropriate regulatory standards").

and issues involved in the claimed treatment," and that "[o]ver

a 2-year period immediately preceding the claim of treatment,

Customs consistently applied that determination [. . .]."

19 C.F.R. §§ 177.12(c)(1)(i)(A), (C).  Plaintiff and Defendant

seek a ruling[31] on the meaning of "claim of treatment," in order

to establish when the "2-year period immediately preceding claim

of treatment" occurred, to provide a framework for the

"remaining discovery in this case." See Def.'s Br., ECF No. 36,

at 7-8.

       Defendant argues that, based on the dictionary

definition of the word "claim," the phrase "claim of treatment"

means a written application or mechanism through which Plaintiff

"first asked or called for a finding that [a] treatment

existed," and dated to the time of filing. Def.'s Br., ECF No.

36, at 8.  According to the Defendant, Plaintiff's claim of

treatment was its March 8, 2012 protest, making the relevant

"two year [evidentiary] 'look back' period . . . approximately

March 8, 2010 — March 8, 2012." Id. at 8.  Plaintiff argues that

"claim of treatment" is not defined in regulation or statute,

---

[31] Because this presents solely an issue of regulatory
interpretation – the facts on this narrow issue are undisputed,
Def.'s Br., ECF No. 36, at 7; Pl.'s Br., ECF No. 39-1, at 13-14
– pursuant to USCIT Rule 56(a), it is a question ripe for
summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S.
at 247-48; see also Puerto Rico Towing & Barge Co. v. United
States, 33 CIT 1131, 1133, 637 F. Supp. 2d 1266, 1267 (2009).

Pl.'s Reply, ECF No. 50, at 12, such that a "claim of treatment"
should be considered the statement, made in whatever filing
procedurally was available, and dated according to the facts
contained therein, Pl.'s Br., ECF No. 39-1, at 15-16.  According
to the Plaintiff, its claim of treatment was properly made in
its March 8, 2012 protest, but the effective date of its claim
is "the date of the earliest entry [at issue]," Pl.'s Mot., ECF
No. 39, at 1, making the two-year "look-back" period
approximately October 2008 through October 2010. Pl.'s Br., ECF
No. 39-1, at 15-16; see Summons, ECF No. 1 (dating earliest
entry at issue here to October 24, 2010).

A. *Defining a "claim of treatment"*

"When construing a regulation," the "same
interpretative rules" apply as when "analyzing the language of a
statute." Mass. Mut. Life Ins. Co. v. United States, 782 F.3d
1354, 1365 (Fed. Cir. 2015) (citation omitted).  This means
that, under the *de novo* standard of review applicable here, our
analysis begins with "the regulatory language itself," Roberto
v. Dep't of Navy, 440 F.3d 1341, 1350 (Fed. Cir. 2006) (citation
omitted), to ascertain its "plain meaning," Lengerich v. Dep't
of Interior, 454 F.3d 1367, 1370 (Fed. Cir. 2006) (citations

omitted).[32]   Because meaning is a function of context, "[i]n

interpreting a regulatory provision, we examine the text of the

---

[32] While, under <u>Auer v. Robbins</u>, the court will defer to an
agency's interpretation of its own ambiguous regulation, such
deference is unwarranted where the interpretation is "plainly
erroneous," "inconsistent with the regulation" itself, or "does
not reflect the agency's fair and considered judgment on the
matter in question." 519 U.S. 452, 461-462 (1997) (internal
quotation marks and citations omitted).
    Although Defendant advances an interpretation of 19 C.F.R.
§ 177.12(c)(1)(i)(C), <u>see</u> Def.'s Br., ECF No. 36, at 7-9; Def.'s
Resp., ECF No. 47, at 12-17, deference is unwarranted here
because the interpretation appears to be "nothing more than a
convenient litigating position, or a *post hoc* rationalization
advanced" by counsel in order "to defend past agency action
against attack." <u>See Christopher v. SmithKline Beecham Corp.</u>,
132 S. Ct. 2156, 2166-67 (2012) (internal citations, quotation
marks, and alteration marks omitted).  "To merit deference" an
agency's interpretation "must have been actually applied in the
present agency action." <u>Lengerich</u>, 454 F.3d at 1372.  It was not
so applied here.  Rather, the interpretation appears in
Defendant's briefings alone, without any reference to any
decision or interpretation made by Customs at the administrative
level, whether in this case or otherwise. <u>See</u> Def.'s Br., ECF
No. 36, at 7-9; Def.'s Resp., ECF No. 47, at 12-17.  This is
likely because there was no agency interpretation or application
of the regulation at the administrative level. <u>See</u> Protest 1512-
12-100039 (Mar. 8, 2012) <u>reproduced in</u> Pl.'s Br., ECF No. 39-1
at Ex. D (denying protest in accordance with the disposition
Protest, 1512-10-100149, without discussion of Plaintiff's
19 U.S.C. § 1625(c) claim); <u>see</u> HQ H158256 (Nov. 16, 2011),
<u>available at</u> 2011 WL 8200988 (deciding Protest 1512-10-100149
without discussion of 19 U.S.C. § 1625(c) or 19 C.F.R.
§ 177.12).  Moreover, outside of this action, Customs'
understanding of the "2-year period immediately preceding the
claim of treatment," 19 C.F.R. § 177.12(c)(1)(i)(C), has been
inconsistent, being variously defined as "the two year period
immediately preceding the [entry of the] merchandise subject to
the claim of treatment," HQ H076723 (Nov. 24, 2010), <u>available
at</u> 2010 WL 5810910 at *11, the "two years prior to the date of
the last liquidated entry subject to the claim," HQ 966756 (Aug.
19, 2004), <u>available at</u> 2004 WL 2904423, at *4 (also asserting
that this requirement is "codified at 19 C.F.R. § 177.12"), and
                                          (footnote continued)

regulation as a whole, reconciling the section in question with sections related to it," id., including "its object and policy," Warner-Lambert Co. v. Apotex Corp., 316 F.3d 1348, 1355 (Fed. Cir. 2003) (quoting U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 455 (1993)).  "The plain meaning that we seek to discern is the plain meaning of the whole [regulation], not of isolated sentences." Beecham v. United States, 511 U.S. 368, 372 (1994) (citations omitted).[33]

---

the two years prior to the filing date of the document the claim comes in, see, e.g., HQ H025849 (Nov. 17, 2010), available at 2010 WL 5810900 (in context of a protest determination, finding that the claim of treatment was made in protestant's initial request for internal advice pursuant to 19 C.F.R. § 177.11 and the two years prior to that request were the relevant evidentiary period).  It follows that, because there is no indication that Defendant's interpretation represents "the agency's considered position and not merely the views of litigating counsel," it is afforded no deference under Auer. See Mass. Mut. Life Ins., 782 F.3d at 1370 (quoting Abbott Labs. v. United States, 573 F.3d 1327, 1333 (Fed. Cir. 2009)).

Further, this lack of deference is in better keeping with the plain language of the applicable, statutorily prescribed standard of review, as "civil actions [that] contest[] the denial of a protest" are reviewed "upon the basis of the record made before the court," 28 U.S.C. § 2640(a)(1), that is "de novo," Park B. Smith, 347 F.3d at 924. Cf. Perez v. Mortgage Bankers Ass'n, 135 S. Ct. 1199, 1211-13 (2015) (Scalia, J., concurring) (arguing that Auer deference is in direct conflict with the standards of review provided in the Administrative Procedure Act at 5 U.S.C. § 706).

[33] See King v. St. Vincent's Hosp., 502 U.S. 215, 221 (1991) ("[T]he cardinal rule that a [regulation] is to be read as a whole, since the meaning of [regulatory] language, plain or not, depends on context.") (citation omitted).

19 C.F.R. § 177.12 does not provide a definition for the phrase "claim of treatment," or even of the term "claim." Where a term or phrase is not expressly defined in a regulation, it is presumed to have its ordinary meaning.[34]  For the ordinary meaning, we look to the dictionary.[35] At the time the 19 C.F.R. § 177.12 was adopted, "claim" was variously defined as: "[t]he aggregate of operative facts giving rise to a right enforceable by a court"; "[t]he assertion of an existing right; any right to payment or an equitable remedy, even if contingent or provisional"; "[a] demand for money or property to which one asserts a right"; and "[a]n interest or remedy recognized at law; the means by which a person can obtain a privilege,

---

[34] See Mass. Mut. Life Ins., 782 F.3d at 1365 (considering the "plain language of the regulation and . . . the terms in accordance with their common meaning") (internal citations, quotation marks, and alteration marks omitted); Warner-Lambert, 316 F.3d at 1355 ("When a [regulation] does not define a given word or phrase, we presume that [the agency] intended the word or phrase to have its ordinary meaning.") (citing Asgrow Seed Co. v. Winterboer, 513 U.S. 179, 187 (1995)).

[35] Massachusetts Mut. Life Ins., 782 F.3d at 1367 ("When terms are undefined, the court may consider the definitions of those terms in order to determine their meaning.") (citations omitted); Am. Express Co. v. United States, 262 F.3d 1376, 1381 n.5 (Fed. Cir. 2001) ("It is appropriate to consult dictionaries to discern the ordinary meaning of a term not explicitly defined by statute or regulation.").

possession, or enjoyment of a right or thing; [cause of action]." BLACK'S LAW DICTIONARY 240 (7th ed. 1999).[36]

A "claim," then, may be either the assertion that a right exists or the means through which that assertion is made. Under the former meaning, Plaintiff's "claim" is the assertion made within its March 8, 2012 protest that the entries at issue here were "classifiable [under the duty-free provision, 5803, HTSUS,] due to an established treatment," absent appropriate notice and comment, pursuant to 19 U.S.C. § 1625(c). See Attach. to Protest, ECF No. 39-1 at Ex. D, at 1.  Under the latter meaning, Plaintiff's "claim" is its March 8, 2012 protest itself. See Protest 1512-12-100039, ECF No. 39-1 at Ex. D.

Reading "claim of treatment" in the context of the regulation as a whole, "reconciling the section in question with sections related to it," Lengerich, 454 F.3d at 1370, clarifies which definition is appropriate here.[37]  While the phrase "claim of treatment" appears at only one other time in the regulatory

---

[36] "Claim" is also defined therein as a "right to payment or to an equitable remedy for breach of performance if the breach gave rise to a right of payment," and, in patent law, a "formal statement describing the novel features of an invention and defining the scope of the patent's protection." Id. at 241.

[37] See NLRB v. Federbush Co., 121 F.2d 954, 957 (2d Cir. 1941) (L. Hand, J.) ("Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used[. . .].").

framework (and much to the same effect),[38] "claim" and

"treatment" appear in various iterations in relation to each

other throughout.  Specifically, 19 C.F.R. § 177.12 provides

detailed guidance on what evidence is relevant and necessary to

assert a treatment claim.[39]  In contrast, the regulation does not

provide or require a specific mechanism through which

assertion, a treatment claim, must be made.[40]  Indeed, in

---

[38] Stating that there is no treatment if the importer fails to
establish the treatment "over the 2-year period immediately
preceding the claim of treatment." 19 C.F.R.
§ 177.12(c)(1)(iii)(A).

[39] In making a claim of treatment, the "evidentiary burden as
regards the existence of the previous treatment is on the person
claiming that treatment." 19 C.F.R. § 177.12(c)(1)(iv).  That
person must provide, *inter alia*, evidence to establish that
"[t]here was an actual determination by a Customs officer
regarding the facts and issues involved in the claimed
treatment," id. at § 177.12(c)(1)(i)(A), and should provide, if
known, "the name and location of the Customs officer who made
the determination on which the claimed treatment is based," id.
at § 177.12(c)(1)(iv). "[T]he person claiming a previous
treatment must be prepared to submit to Customs written or other
appropriate evidence of the earlier actual determination of a
Customs officer that the person relied on in preparing the entry
and that is consistent with the liquidation of the entry." Id.
If it is found that this person "made a material false statement
or material omission in connection with a Customs transaction or
in connection with the review of a Customs transaction and that
statement or omission affected the determination on which the
treatment claim is based," then Customs will find no treatment.
Id. at § 177.12(c)(1)(iii)(C).

[40] 19 C.F.R. § 177.12(c)(2)(ii) provides that a person may make a
"written application" to Customs "claiming that the interpretive
ruling has the effect of modifying or revoking the treatment
previously accorded by Customs to his substantially identical
transactions," such that Customs will "consider delaying the
effective date of the interpretive ruling with respect to that
                                          (footnote continued)

practice, Customs accepts treatment claims in a variety of

forms, including, as here, protests pursuant to 19 U.S.C.

§ 1514.[41]  It follows then, from the text of 19 C.F.R. § 177.12,

that a "claim of treatment" is the assertion that a right to a

treatment exists, not the administrative mechanism or filing

through which such a claim is made.

        Accordingly, Plaintiff's claim of treatment was the

assertion in its March 8, 2012 protest that its entries were

"classifiable [under the duty-free provision, 5803, HTSUS,] due

---

person, and continue the treatment previously accorded the
substantially identical transactions," pending notice and
comment.  This may be the non-protest mechanism that Defendant
alludes to, without citation. Def.'s Resp., ECF No. 47, at 14.
However, the regulation does not equate "written application"
with "claim of treatment," nor does it define "written
application" in such a way that precludes use of existing
administrative mechanisms that require written application,
e.g., protests, see 19 U.S.C. § 1514(c)(1) ("A protest . . .
shall be filed in writing, or transmitted electronically
pursuant to an electronic data interchange system [. . .].").

[41] See HQ H209836 (Apr. 23, 2015), 2015 WL 4385860 at *7 ("The
claim of treatment [was] made in conjunction with the protested
entries"); HQ H241622 (Apr. 24, 2015), available at 2015 WL
4385863 (claim of treatment made in a protest); HQ H076723 (Nov.
24, 2010), available at 2010 WL 5810910 (same); HQ H074375 (Nov.
22, 2010), available at 2010 WL 5819067 (same); HQ H022287 (Dec.
30, 2010), available at 2010 WL 6524009 (same); HQ 967289 (Jan.
4, 2005), available at 2005 WL 934029 at *3 (noting that "[t]he
claim of treatment [was] made in [the] protest"); HQ 966794
(Sept. 7, 2004), available at 2004 WL 3049068 (claim of
treatment made in a protest); see also HQ H025849 (Nov. 17,
2010), available at 2010 WL 5810900 (claim of treatment made in
request for internal advice pursuant to 19 C.F.R. § 177.11); HQ
W968251 (Oct. 3, 2007), available at 2007 WL 4792308 (claim of
treatment made in letter to Customs); HQ 965956 (Jan. 22, 2003),
available at 2003 WL 1386611 (same).

to an established treatment," absent appropriate notice and

comment, pursuant to 19 U.S.C. § 1625(c). Attach. to Protest,

ECF No. 39-1 at Ex. D, at 1.[42]  It was not the protest itself.

        B. *Dating a "claim of treatment"*

        Given that a "claim of treatment" is distinct from the

filing in which it is made, the "2-year period immediately

preceding [that] claim of treatment" is also, while not

necessarily different, distinct.  A claim is not the same as the

filing in which it comes, and is dated by its facts not its

filing. Cf. Bay Area Laundry & Dry Cleaning Pension Trust Fund

v. Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997) (dating a

claim to when it arises, not to when the complaint is filed).

Inasmuch as a "claim of treatment" is an assertion of a right,

made up of its operative facts, so too is the 2-year period

immediately preceding it defined by that assertion and those

facts.  Reading 19 C.F.R. § 177.12 in its statutory and

regulatory context, "reconciling the section in question with

sections related to it," Lengerich, 454 F.3d at 1370, with an

eye to its object and policy, Warner-Lambert, 316 F.3d at 1355,

confirms this understanding.

---

[42] See also id. at 2-3 ("In late 2009/ early 2010, CBP at the
port of Los Angeles changed the classification for Heading 5803
to classification as a cotton fabric in Heading 5208.").

Regarding context, Customs can be presumed to be
"knowledgeable about existing law pertinent to [regulations it
promulgates]." See VE Holding Corp. v. Johnson Gas Appliance
Co., 917 F.2d 1574, 1581 (Fed. Cir. 1990) (citing Goodyear
Atomic Corp. v. Miller, 486 U.S. 174, 184–85 (1988)). Treatment
claims, lacking a specific administrative mechanism, are often
made through protests.[43]  This prevalence is likely because, if
an importer wishes to contest an interpretive ruling or decision
that results in the liquidation of its entries, e.g., a notice
of action, it must make its claim of treatment through a protest
to ensure this Court's jurisdiction over any appeal of that
ruling or decision.[44]  However, protests may only be filed after

---

[43] See supra, footnote 41.

[44] See 19 U.S.C. § 1514(a)(2) (providing that "decisions of the
Customs Service, including the legality of all orders and
findings entering into the same, as to . . . the classification
and rate and amount of duties chargeable . . .  shall be final
and conclusive upon all persons (including the United States and
any officer thereof) unless a protest is filed in accordance
with this section, or unless a civil action contesting the
denial of a protest, in whole or in part, is commenced in the
United States Court of International Trade [. . .]."); see also
Volkswagen of Am., Inc. v. United States, 532 F.3d 1365, 1370
(Fed. Cir. 2008) ("As this court and its predecessor have
confirmed, the language of [19 U.S.C.] § 1514 establishes
liquidation as a final challengeable event in Customs' appraisal
process.  Findings related to liquidation—including valuation —
merge with the liquidation.  If an importer wishes to challenge
the appraised value of merchandise, the importer must protest
the liquidation.") (citations omitted); Int'l Custom Prods.,
Inc. v. United States, 467 F.3d 1324, 1326–28 (Fed. Cir. 2006)
(holding that this Court did not have 28 U.S.C. § 1581(i)
                                              (footnote continued)

liquidation of the entries at issue. 19 U.S.C. § 1514(c)(3)(A).

Under statute, Customs has one year to liquidate an entry before

it is deemed liquidated by operation of law. 19 U.S.C.

§ 1504(a).  Typically, Customs liquidates an entry within 314

days. See 314-Day Liquidation Cycle-Trade Notice, CSMS 97-000727

(Aug. 3, 1997).  Importers have up to 180 days from liquidation

to file their protest. 19 U.S.C. § 1514(c)(3); 19 C.F.R.

§ 174.12(e).  This means that the most common mechanism for

making a claim of treatment, a protest, may not be filed until

494 days after a treatment has changed.[45]  It would be contrary

to Customs' presumed knowledge to read 19 C.F.R. § 177.12 and

its two-year evidentiary requirement in such a way that would,

because of procedural requirements laid out in other regulations

and statutes, consistently and inevitably guide the agency or

court to consider an evidentiary period that is, because it is

after the liquidation, largely irrelevant (*i.e.,* when the

---

jurisdiction over plaintiff's 19 U.S.C. § 1625(c) challenge to a
notice of action because jurisdiction under 28 U.S.C. § 1581(a)
would not have been manifestly inadequate; remanding to this
Court with instructions to dismiss for lack of jurisdiction
because the plaintiff had not protested the liquidation of the
entries subject to the challenged notice of action as required
for 19 U.S.C.  § 1581(a) jurisdiction).

[45] Cf. Xerox Corp. v. United States, 28 CIT 1667, 1670 (2004)
aff'd, 423 F.3d 1356 (Fed. Cir. 2005) ("[W]hen Customs replaced
its 90 day liquidation cycle with a 314 day liquidation cycle"
it meant "that the typical time for filing a protest would
extend beyond a year from the date of entry.")

alleged treatment has already been modified or revoked for more than a year).

Regarding object and policy, a regulation must be interpreted "in [a] manner which effectuates rather than frustrates [its] major purpose." Shapiro v. United States, 335 U.S. 1, 31 (1948).  Customs chose the two years immediately "preceding the claim of treatment" as the requisite evidentiary period because the agency consider it the most relevant for "protecting the treatment rights of a person." See Customs Service: 19 C.F.R. Part 177, 67 Fed. Reg. at 53,494.  This purpose evinces a context-based approach meant to ensure that "the interested public has notice of a proposed change in Customs' policy" and can "modify any current practices that were based in reliance on Customs' earlier policy." Sea-Land Serv., Inc. v. United States, 239 F.3d 1366, 1373 (Fed. Cir. 2001) (summarizing the purpose of enabling statute 19 U.S.C. § 1625).

Here, Plaintiff's "claim of treatment" was the assertion, made in its March 8, 2012 protest, of its right to a treatment pursuant to 19 U.S.C. § 1625(c). Attach. to Protest, ECF No. 39-1 at Ex. D, at 1, 2-3.  The defining, operative facts that gave rise to Plaintiff's claim are that Plaintiff made an entry on July 11, 2009, and, on January 14, 2010, through a CF-29 notice of action, Customs reclassified this entry and all similar pending entries from a duty-free to a dutiable

provision. See Jan. 2010 Notice of Action, ECF No. 39-1 at
Ex. A; Attach. to Protest, ECF No. 39-1 at Ex. D, at 2 ("In late
2009/early 2010, CBP at the port of Los Angeles changed the
classification [of Plaintiff's entries]"); see also 2d. Am.
Compl., ECF No. 11-1, at ¶ 14.  This entry is the first subject
to Plaintiff's claim of treatment and, as such, the inflection
point when Plaintiff's claimed treatment changed, i.e., when the
"pattern of actions taken by Customs on [Plaintiff's] import
transactions, on which [Plaintiff claims it] has reasonably
relied," putatively changed without notice or comment. See
Customs Service: 19 C.F.R. Part 177, 67 Fed. Reg. at 53,489
(providing Customs' explanation of the purpose behind enacting
19 U.S.C. § 1625(c) and 19 C.F.R. § 177.12).  The "relevant"
2-year evidentiary period "for purposes of protecting the
treatment rights" of the Plaintiff, then, are two years prior to
that point, immediately prior to when the claim arose. See id.
at 53,494.  Accordingly, the two years immediately preceding
Plaintiff's claim of treatment are the two years immediately
preceding its earliest affected entry (i.e., the first entry
that does not receive the anticipated, relied upon treatment),[46]
here July 11, 2007 through July 11, 2009.[47]

---

[46] Cf. Customs own interpretation in previous 19 U.S.C.
§ 1625(c)(2) determinations, HQ H076723 (Nov. 24, 2010),
available at 2010 WL 5810910 at *11 (finding the relevant
                                        (footnote continued)

**CONCLUSION**

Therefore, upon consideration of Defendant's Partial

---

evidentiary for a claim of treatment was "the two year period immediately preceding the claimed treatment tariff classification," *i.e.*, "the two year period immediately preceding the [entry of] merchandise subject to the claim of treatment").

[47] This entry, and subsequent January 2010 notice of action, are within the scope of relevant, and therefore admissible evidence. See Fed. Rule Evid. 402; Int'l Custom Prods. v. United States, __ CIT __, 774 F. Supp. 2d 1338, 1342 (2011) (denying defendant's motion to preclude evidence in a 19 U.S.C. § 1625(c) action brought under 28 U.S.C. § 1581(a) "to the extent that the evidence is otherwise admissible and [relevant]") (citing Fed. Rule Evid. 402).  However, because this entry is not part of the underlying protest here (its liquidation does not appear to have been protested at all), because it is not listed on the summons in this action, this Court lacks jurisdiction to grant relief with regards to it. Summons, ECF No. 1; 28 U.S.C. § 1581(a); DaimlerChrysler Corp. v. United States, 442 F.3d 1313, 1319 (Fed. Cir. 2006) (holding that this Court lacks jurisdiction over entries not listed on the summons); Int'l Custom Prods., Inc. v. United States, __ CIT __, 878 F. Supp. 2d 1329 (2012), aff'd, 748 F.3d 1182 (Fed. Cir. 2014) (finding that a CF-29 notice of action was an "interpretive ruling or decision" within the meaning of 19 U.S.C. 1625(c), while maintaining jurisdiction, under 28 U.S.C. 1581(a) via another, unrelated entry, protest, and denial).

While Defendant notes the peculiarity of Plaintiff's failure to protest the liquidation of the entry subject to the January 2010 notice of action, Def.'s Resp., ECF No. 47, at 15, it does not challenge Plaintiff's failure to do so as creating unreasonable or prejudicial delay in commencing this action. See USCIT Rule 8(d)(1) (providing laches as an available affirmative defense); Holmberg v. Armbrecht, 327 U.S. 392, 396 (1946) (discussing the laches defense: "There must be conscience, good faith, and reasonable diligence, to call into action the powers of the court [. . .]. [The] court may dismiss a suit where the plaintiffs' lack of diligence is wholly unexcused; and both the nature of the claim and the situation of the parties was such as to call for diligence.") (internal quotation marks and citations omitted).

Motion for Summary Judgment, and Plaintiff AFF's Cross-Motion

for Summary Judgment, Defendant's motion is hereby DENIED and

Plaintiff's cross-motion is hereby GRANTED in part and DENIED in

part.  The parties shall consult and, not later than November

20, 2015 propose a schedule for further proceedings in this

matter.

       IT IS SO ORDERED.


/s/Donald C. Pogue
Donald C. Pogue, Senior Judge
Dated: October 21, 2015
      New York, NY